Christopher Seidman
Harmon & Seidman LLC
101 South Third Street, Suite 265
Grand Junction, Colorado 81501
Tel:  (970) 245-9075
E-mail:  chris@harmonseidman.com

Amanda Bruss
Harmon & Seidman LLC
12354 East Bates Circle
Aurora, CO 80014
Tel:  415-271-5754
E-mail:  amanda@harmonseidman.com

*Attorneys for Plaintiff Bob Daemmrich*
*Photography, Inc.*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BOB DAEMMRICH PHOTOGRAPHY, INC., | ) ) ) | Case No. 1:15-cv-01102 |
| Plaintiff, | ) ) | COMPLAINT |
| v. | ) ) | DEMAND FOR JURY TRIAL |
| PEARSON EDUCATON, INC., | ) ) | |
| Defendant. | ) ) | |

_____

Plaintiff Bob Daemmrich Photography, Inc. ("Daemmrich") for its Complaint against Defendant Pearson Education, Inc. ("Pearson") alleges:

**STATEMENT OF ACTION**

1.      This is an action for copyright infringement brought by Daemmrich, the owner of copyrights to the photographs described hereafter and originally licensed for limited use by Pearson, against Pearson for unauthorized uses of Plaintiff's photographs.

1

**PARTIES**

2.    Bob Daemmrich Photography, Inc. is a stock photography agency that licenses photographs, including the in-suit images, for distribution throughout Texas and the United States. Daemmrich is a corporation duly organized under the laws of Texas with its principal place of business in Austin, Texas.

3.    Pearson is a sophisticated global publisher with its principle place of business in Upper Saddle River, New Jersey.  Pearson sells and distributes its publications in the Western District of Texas and throughout the United States, and overseas, including the publications and ancillary materials in which Plaintiff's photographs are unlawfully reproduced.  At all times pertinent to the allegations herein, Pearson acted through or in concert with its various imprints, divisions, subsidiaries, affiliates, and/or third parties.

**JURISDICTION**

4.    This is an action for injunctive relief, statutory damages, monetary damages, and interest under the copyright laws of the United States.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (copyright).

**VENUE**

5.    Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 28 U.S.C. §§ 1400(a).

**FACTS COMMON TO ALL COUNTS**

6.    Daemmrich is the owner of copyrights in the attached photographic images ("Photographs") depicted in Exhibits 1, 2, 3, and 4.

7.    As set forth in Exhibits 1 – 4, the Photographs have been registered with the United States Copyright Office or have pending copyright registrations.  For the Photographs identified as having pending registrations, complete applications, fees, and deposit materials for copyright registrations have been received by the Copyright Office in compliance with the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

8.     Between 1993 and 2013, in response to permission requests from Pearson, Daemmrich sold Pearson limited licenses to use copies of the Photographs in particular educational publications identified in Pearson's requests.   The licenses granted to Pearson were expressly limited by number of copies, distribution area, language, duration, and/or media, as summarized in Exhibit 1.

9.     In addition to Photographs Daemmrich directly licensed to Pearson summarized in Exhibit 1, Daemmrich also entered into agreements with stock photography agencies The Image Works, Photo Edit, Inc., and Stock Boston, Inc. ("Agencies"), authorizing them to grant limited licenses for use of the Photographs to Pearson, summarized in Exhibits 2, 3, and 4 respectively.

10.     After obtaining the licenses, Pearson exceeded the licenses and infringed Daemmrich's copyrights in the Photographs in various ways, including:

      a.     printing more copies of the Photographs than authorized;

      b.     distributing publications containing the Photographs outside the authorized distribution area;

      c.     publishing the Photographs in electronic, ancillary, or derivative publications without permission;

      d.     publishing the Photographs in international editions and foreign publications without permission;

      e.     publishing the Photographs beyond the specified time limits.

11.     After obtaining access to the Photographs, Pearson used the Photographs without any license or permission in additional publications that have not yet been identified.   Because Pearson alone knows of these wholly unauthorized uses, Daemmrich cannot further identify them without discovery.

12.     Pearson alone knows the full extent to which it has infringed Daemmrich's copyrights by making unauthorized uses of the Photographs, but Pearson has not shared this knowledge with Daemmrich.

13.     Other photographers and stock photography agencies have brought legal actions against Pearson alleging copyright infringement claims like those asserted by Daemmrich in this

action. Since 2009, Pearson has been sued for copyright infringement in furtherance of the scheme described herein in at least 30 actions.

14. On May 3, 2010, and January 13, 2011, Julie Orr, Pearson's Curriculum Group's Image Manager, Rights and Permissions, testified that Pearson had published photographs in its textbooks in some instances without obtaining any permission and had printed in excess of license limits in situations where licenses were obtained.

15. On June 16, 2010, Maureen Griffin, Pearson's Curriculum Group's Photo Commissions Editor, testified that Pearson had published photographs in its textbooks "before the FTP [file to printer] date" and that "the number of textbooks printed exceeded the licenses we obtained."

16. Pearson's own documents produced in parallel cases show that Pearson frequently and greatly exceeded the licensed print quantities that it requested and paid for, as illustrated below:

| PEARSON Publication | Licensed Print Amount | Actual Print Amount |
|---|---|---|
| *SBG Music,* Grade 4, 2002 | 40,000 | 172,822 |
| *Scott Foresman - Social Studies,* Grade 2, 2005 | 200,000 | 427,547 |
| *Prentice Hall, Latin America,* 1998 | 25,000 | 250,431 |
| *Paso a Paso,* 2000 | 40,000 | 513,821 |
| *Top Notch 1*, 2005 | 100,000 | 939,813 |

17. Numerous instances of Pearson's infringements are summarized in documents filed in two parallel cases, *Viesti Associates, Inc. v. Pearson Education, Inc*. (D. Colo. No. 1:11-cv-01687) and *Viesti Associates, Inc. v. Pearson Education, Inc*. (D. Colo. No. 1:12-cv-01431). *See* Exhibits 5 and 6 attached hereto.

18.     Pearson has been adjudicated a copyright infringer for engaging in the same practices that are alleged here.  In *Bean et al., v. Pearson Education, Inc.*, 949 F.Supp.2d. 941 (D. Ariz. 2013), Pearson was found liable on summary judgment for 418 claims of unauthorized uses of photographs in its textbooks.    In *Frerck v. Pearson Education, Inc.*, 63 F.Supp.3d 882 (N.D. Ill. 2014, Pearson was found liable on summary judgment for 343 claims of unauthorized uses of photographs in its textbooks.

### *Indirect Copyright Infringement*

19.     Pearson facilitates the international distribution of its publications, in part, through its international rights management group ("IRMG") located in Indiana and New Jersey.  The IRMG website indicates that it is the IRMG's "mission to maximize the number of translations and local versions published that are based upon products of Pearson Education," and that the IRMG "arranges for approximately 4,000 licenses annually, which includes translations in some 50 languages read around the world."  The IRMG website also indicates that its team "frequently travels to countries to visit with local publishing partners who are interested in obtaining foreign rights to our books."  Exhibit 7.

20.     Upon information and belief, Pearson reproduced and distributed the Photographs without Plaintiff's permission to other entities, subsidiary companies, divisions, affiliates and/or third parties ("Third Parties").  Upon information and belief, Pearson's unauthorized reproduction and distribution to the Third Parties took place in the United States.

21.     Upon information and belief, the Third Parties then translated the publications at issue into additional languages or published them in local adaptations or reprints and included the Photographs in these publications without Plaintiff's permission.  For example:

    a.  Pearson reproduced and distributed one or more of Daemmrich's photographs to its affiliate Pearson Studium in Germany for use in the unauthorized German translation of *Psychology*, 18th Edition.  Exhibit 8.

b.  Pearson reproduced and distributed one or more of Daemmrich's photographs to its affiliate Pearson Education France for use in the unauthorized French translation of *Psychology*, 18th Edition.  Exhibit 9.

c.  Pearson reproduced and distributed one or more of Daemmrich's photographs to its affiliate Pearson Education France for use in the unauthorized French translation of *Essentials of Human Anatomy and Physiology,* 8th Edition.  Exhibit 10.

22.    By transmitting the Photographs to the Third Parties, Pearson enabled, induced, caused, facilitated, or materially contributed to the Third Parties' unauthorized reproduction and distribution of the Photographs.

23.    Upon information and belief, Pearson permitted Third Parties to distribute Pearson's publications containing the Photographs in new territories, to translate its publications into new languages, and to adapt its publications for distribution in additional territories.

24.    Upon information and belief, Pearson knew when it reproduced and distributed the Photographs that the Third Parties would reproduce and distribute the Photographs without Plaintiff's authorization.

25.    Upon information and belief, Pearson knew, on an ongoing basis, that the Third Parties were reproducing and distributing Plaintiff's Photographs without authorization.

26.    Upon information and belief, Pearson had the right and ability to control the Third Parties' and use of the Photographs.

27.    Pearson directly profited from its transmission of the Photographs to the Third Parties since such Third Parties paid Pearson for translation and distribution rights, including access to all of the content in the publications.

28.    Upon information and belief, Pearson entered into agreements with Third Parties permitting the Third Parties to create and sell foreign language translations and adaptations of Pearson's publications ("Translations"), including publications containing Daemmrich's photographs.

29.     Upon information and belief, the identities of the Third Parties that created and distributed the Translations include, but are not limited to, Brain Shuppan, East China Normal University Press, ERPI, Farterng Culture Co. Ltd., Gdanskie Wydawnictwo Psycholgiczne, Grupo A Educacao S.A., Nobel Akademik Yayincilik, Open University Of Israel, Pearson Benelux, Pearson Educacion De Mexico S.A.De C.V., Pearson Educacion S.A., Pearson Education Asia Ltd., Pearson Education Deutschland Gmbh, Pearson Education Korea, Pearson Education Taiwan Limited, Pearson France, Pearson Italia Spa, Penerbit Erlangga, Piter Press Ltd., Polish Scientific Publishers Pwn, Pro-Ed Publishing Company, Sigma Press,Inc., and Union-Center For Social Sciences.

30.     Upon information and belief, in exchange for access to the content of Pearson's publications and for the rights to translate, adapt, publish, distribute and sell versions of Pearson's publications, the Third Parties paid ongoing, periodic royalties based on the number of sales of the Translations.

31.     Upon information and belief, the Third Parties paid Pearson recoupable advances against accruing royalties from the sales of the Translations.

32.     Upon information and belief, the Third Parties provided to Pearson periodic written sales reports for the Translations.

33.     Upon information and belief, Pearson had the right to examine the sales records of the Third Parties to determine the accuracy of royalty payments pertaining to the Translations.

34.     Upon information and belief, the agreements entered into between Pearson and the Third Parties granted rights and imposed obligations that lasted for years after the agreements were entered.

35.     Upon information and belief, Pearson and the Third Parties routinely extended the terms of the agreements for additional years.

36.     Upon information and belief, the Third Parties were required to notify Pearson if the Third Parties discontinued the manufacturing and distribution of the Translations.

37.     Upon information and belief, under the terms of the agreements, the Third Parties were required to provide Pearson copies of the Translations so Pearson could inspect the Translations to ensure they complied with specifications set forth in the agreements.

38.     Upon information and belief, under the agreements, the Translations were required to prominently identify Pearson as the creator and copyright holder of content in the original publications.

39.     Upon information and belief, as required under the agreements, the frontispieces to the Translations stated that the Third Parties' publications were authorized translations or adaptations of Pearson's original English language versions.

40.     Upon information and belief, under the agreements, the Translations were required to display Pearson's trademarks exactly as Pearson displays its trademarks in its original publications.

41.     Upon information and belief, the Third Parties were required to notify Pearson of, and get Pearson's prior written approval for, any changes of content to Pearson's original publication – apart from the language translation, itself – including the addition, deletion, or alteration of photographs in the Translations.

42.     Upon information and belief, the agreements purported to grant rights only to the copyrighted material owned by Pearson.  Copyrighted materials owned by outside parties, such as Daemmrich's Photographs, were not transferred by the agreements.

43.     Upon information and belief, the Third Parties were purportedly required to obtain permission from the rights holders themselves to use the material not owned by Pearson, unless Pearson stated in writing that such rights had already been acquired.

44.     Upon information and belief, with one or two possible exceptions, the Third Parties did not contact Daemmrich to obtain its permission to use the Photographs in the Translations.

45.     With one or two possible exceptions, Daemmrich did not grant to the Third Parties permission to use the Photographs in the translations or adaptations.

46.     Upon information and belief, Pearson, itself knowledgeable about the costly and time-intensive process of obtaining permission to use rights holders' works, knew or should have known that the Third Parties were not obtaining permission from the outside rights holders.

47.     Upon information and belief, Pearson did not tell Daemmrich, or other rights holders with whom Pearson had ongoing relationships, that it was providing Daemmrich's Photographs to Third Parties, or that while Pearson was doing so, it was purporting to create a duty solely on the part of the Third Parties to independently contact the rights holders to obtain permission to use the Photographs.

48.     Upon information and belief, Pearson had the right and ability to supervise the process by which the Third Parties were purportedly required to obtain permission to use Daemmrich's and other rights holders' works.

49.     Upon information and belief, the Third Parties were required by the agreements to affirmatively report in writing to Pearson that they had secured permission from Daemmrich and other rights holders for the use of their works.

50.     Upon information and belief, in the majority of instances, the Third Parties did not obtain permission from Daemmrich or other rights holders to use their works.

51.     Upon information and belief, in the majority of instances, the Third Parties, despite their purported obligation to do so, did not report to Pearson that they obtained permission from Daemmrich or other rights holders for the use of their works.

52.     Upon information and belief, sometime around 2009, years after Pearson had been selling translation and adaptations rights to Third Parties, Pearson implemented a policy of supervising whether the Third Parties were obtaining permission to use rights holders' works, including Daemmrich's.

53.     Upon information and belief, part of Pearson's policy was to obtain written affirmations from the executives of the Third Parties, which Pearson's executives then countersigned, confirming that the Third Parties obtained permission from Daemmrich and other rights holders for the use of their works.

54. Upon information and belief, Pearson did not follow its policy of requiring Third Parties to obtain permissions and report to Pearson that permissions were obtained with respect to copyrighted materials owned by Daemmrich and other rights holders.

55. Upon information and belief, Pearson earned millions of dollars in royalties from the Third Parties, including revenue related to the sale of unlicensed Translations that contained Daemmrich's photographs.

56. All exhibits attached hereto are incorporated into this complaint by this reference.

## COUNT I
### *Copyright infringement against Pearson*

57. Plaintiff incorporates herein by this reference each and every allegation contained in the paragraphs set forth above.

58. The foregoing acts of Pearson constitute infringements of Plaintiff's copyrights in the Photographs in violation of 17 U.S.C. §§ 501 *et seq.*

59. Plaintiff suffered damages as a result of Pearson's unauthorized use of the Photographs.

## COUNT II
### *Contributory and/or vicarious copyright infringement against Pearson*

60. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

61. The foregoing acts of Pearson constitute contributory and/or vicarious infringement of Plaintiff's copyrights in the Photographs in violation of 17 U.S.C. §§ 501 *et seq.*

62. Plaintiff suffered damages as a result of the unauthorized use of the Photographs.

**WHEREFORE**, Plaintiff requests the following:

1. A preliminary and permanent injunction against Defendants and anyone working in concert with Defendants from copying, displaying, distributing, selling or offering to sell Plaintiff's Photographs described in this Complaint and Plaintiff's photographs not included in suit.

2. As permitted under 17 U.S.C. § 503, impoundment of all copies of Plaintiff's Photographs used in violation of Plaintiff's exclusive copyrights as well as all related records and

1    documents and, at final judgment, destruction or other reasonable disposition of the unlawfully

2    used Photographs, including digital files and any other means by which they could be used again

3    by Defendants without Plaintiff's authorization.

4         3.      An award of Plaintiff's actual damages and all profits derived from the unauthorized

5    use of Plaintiff's Photographs or, where applicable and at Plaintiff's election, statutory damages.

6         4.      An award of Plaintiff's reasonable attorneys' fees.

7         5.      An award of Plaintiff's court costs, expert witness fees, interest and all other

8    amounts authorized under law.

9         6.      Such other and further relief as the Court deems just and proper.

10                         **DEMAND FOR JURY TRIAL**

11       Plaintiff demands a trial by jury of all issues permitted by law.

12    DATED: December 6, 2015

13                                     Plaintiff Bob Daemmrich Photography, Inc., by his
                                    attorneys,

14

15                                     /s/ *Christopher Seidman*
                                    Christopher Seidman

16                                     Harmon & Seidman LLC
                                    101 South Third Street, Suite 265

17                                     Grand Junction, Colorado 81501
                                    Tel: (970) 245-9075

18                                     E-mail: chris@harmonseidman.com

19                                     Amanda Bruss
                                    Harmon & Seidman LLC

20                                     12354 East Bates Circle
                                    Aurora, CO 80014

21                                     Tel: 415-271-5754
                                    E-mail: amanda@harmonseidman.com

22

23

24

25

26

27

28

COMPLAINT, 1:15-CV-01102